## McRAE *v.* STILLWELL, MILLEN & COMPANY.

1. An instrument in the form of a deed purported to convey to named grantees, their heirs and assigns, at a specified price per acre, "all the pine timber suitable for sawmill purposes" on described lots of land. It acknowledged receipt of a specified sum, and recited that the grantor agreed "that the amounts left unpaid this day shall be paid as follows : when each lot is entered to cut said timber, the balance due on each lot is one hundred dollars, which will be due as above stated." The instrument also purported to convey to the grantees, their heirs and assigns, "the full right of way for railroads, tramroads, and wagon-roads in and through the said lands for the purposes above stated, said right of way to continue as long as said mill operations may require." *Held* :

   (*a*) That the true intent and meaning of this instrument was to convey to the grantees, their heirs and assigns, all the timber suitable at the date of the instrument for the purposes indicated ; but that it was incumbent on the grantees, or their successors in title, to cut and remove such timber from the lots within a reasonable time from the date of the conveyance, and that on failure so to do their interest in the timber ceased and determined.

   (*b*) That what would be a reasonable time for so doing was a question of fact to be passed upon and decided in the light of all the facts and circumstances surrounding the transaction.

   (*c*) That inasmuch as the instrument in question conveyed an interest in realty, though the estate was determinable, it was entitled to be recorded; and, if duly recorded, it was admissible in evidence without proof of execution. .

   (*d*) That under such an instrument, payment of the balance of the purchase-money due on each lot was not a condition precedent to the right to enter and cut the timber.

2. Where a grant was made to a partnership composed of two persons, even if a conveyance by them of the property therein described was not prop-

erly executed if only signed by the partnership, yet where such conveyance purported to be to another partnership composed of these two persons and another, if the latter partnership conveyed the property by a deed executed by each of the three partners, and also signed in the firm name, the title to the property passed to the grantee named in that conveyance.

3. As the trial judge did not properly construe the instrument referred to in the first of the above notes, and as the case was tried under a misapprehension of its true intent and meaning, the judgment directing a verdict for the plaintiffs was erroneous, and there should be another hearing in the light of what is here laid down.

Argued May 23, — Decided June 6, 1900.

Equitable petition. Before Judge Smith. Montgomery superior court. November term, 1899.

*W. G. Brantley* and *J. H. Martin,* for plaintiff in error.
*A. C. Wright,* contra.

COBB, J.   Stillwell, Millen & Company brought suit against McRae and others, alleging in their petition that the defendants had damaged them by cutting large quantities of pine timber, the property of the plaintiffs, which was growing on a described lot of land, and that the defendants were still cutting such timber.   The prayer of the petition was, that the defendants be enjoined from cutting the timber and from removing or otherwise interfering with that which had already been cut.   The defendant McRae appeared and answered the petition, and assumed responsibility for the acts of the other defendants; and the case proceeded against him alone.   At the trial the court directed the jury to find a verdict that the defendant be perpetually enjoined from cutting the timber on the land, and that the plaintiffs recover of the defendant a given sum; it being agreed by counsel that if the plaintiffs were entitled to recover at all, the amount for which the court directed a verdict was the proper sum.   The defendant filed a bill of exceptions, assigning error upon the decision of the court directing a verdict in favor of the plaintiffs, and also upon other rulings made during the progress of the trial.

1. The plaintiffs claimed title to the timber as the successors in title of Peacock & Peterson, who were the grantees in a deed from the defendant McRae.   The paper was in form a deed, and, in consideration of seventy-five cents per acre, purported

to convey "all the pine timber suitable for sawmill purposes" on eleven described lots of land, each containing 202½ acres. The paper also contained the following clauses: "I acknowledge the receipt of the sum of five hundred and fifty in cash and note dollars this day paid me by the party of the second part, and do agree that the amounts left unpaid this day shall be paid as follows: when each lot is entered to cut said timber, the balance due on each lot is one hundred dollars, which will be due as above stated. And I also, for the above-stated consideration, give, grant, bargain, sell, alien, and convey to said party of the second part, their heirs and assigns, the full right of way for railroads, tramroads, and wagon-roads in and through the said lands for the purposes above stated, said right of way to continue as long as said mill operations may require. And I will for myself, my heirs and assigns, the above-named premises for said sawmill purposes to the said Peacock & Peterson, their heirs and assigns, forever warrant and defend." It is contended by the plaintiffs, that, as they are the successors in title of the grantees in this deed, they are the owners in fee of the timber described in the deed; that, while they are not the owners of the fee in the land, they have such an interest in the land itself as is necessary for the support and nurture of the trees, which are their property; that they have the right to enter upon the land whenever they desire to remove these trees for the purposes indicated in the deed, and that lapse of time does not at all interfere with this right. On the other hand, the defendant contends, that, while the effect of the conveyance was to pass to the grantees and their successors in title an absolute interest in the trees, construing the paper as a whole, it was not the intention of the parties that the grantees should have a perpetual right to enter and remove the standing timber on the land; and that their estate in the trees was by the very language of the conveyance determinable if the trees were not removed from the land within a reasonable time after the deed was executed. The court gave to the deed the construction contended for by the plaintiffs, and refused to allow the defendant to introduce evidence tending to show that a reasonable time to cut and remove the trees had elapsed.

Counsel for defendant, the plaintiff in error here, contends

that the estate of the plaintiffs in the trees had determined, and the title to the same had become revested in the defendant; and that, this being true, the acts complained of in the petition did not constitute any wrong as against the plaintiffs.  Counsel for plaintiffs, defendants in error here, contend that this case is controlled by the decision in *Baxter* v. *Mattox*, 106 *Ga.* 344, and it appears from the record that the judge placed his ruling in construing the deed upon that decision.  We think, however, there is a clear distinction between the two cases.  The deed in that case conveyed the timber and growing trees "suitable for sawmill purposes and being manufactured into lumber, now upon or that may hereafter grow upon" the land, and also conveyed to the grantee, his heirs and assigns, the right and privilege "now and at any and all times hereafter" to enter upon the land for the purpose of cutting such timber.  The terms of that deed clearly manifested an intention on the part of the grantor to convey to the grantee a perpetual right to enter upon the land and cut and remove the timber and trees not only the trees that were growing at the date of the conveyance, but also any trees that might thereafter grow, although not in existence at the time the deed was made.  As remarked by Mr. Justice Lewis in that case, "If it be possible to convey such a license in perpetuity, it would be difficult to conceive how such an intention could be more clearly expressed than it is in this deed."  In the present case, however, the conveyance, so far as the timber is concerned, is limited to the timber suitable for sawmill purposes on the land at the date of the conveyance.  While the conveyance does not in express terms so declare, no other conclusion can be reached from the language therein employed.  In addition to this, the deed contains a provision that the grantees shall have the right of way for railroads, tramroads, and wagon-roads through the land, "said right of way to continue as long as said mill operations may require;" and the warranty clause of the deed declares that the grantor will forever warrant and defend "the premises for said sawmill purposes" to the grantees, their heirs and assigns.  It would seem that nothing could be clearer than that it was the intention of the parties to this instrument that the grantees should become the owners of the timber suitable for sawmill

purposes growing on the land at the date of the execution of the deed, and that such timber was to be removed from the premises within a reasonable time after the execution of the conveyance. The expression, that the right of way through the land was to "continue as long as said sawmill operations may require," strongly indicates that it was not the intention of the parties to this instrument that the right to enter and remove the timber should continue in perpetuity, but was to come to an end at some time in the future. What that time was can not be declared to be other than what would be a reasonable time to be allowed for the removal of the timber, according to the circumstances of the case. In the case of *Baxter* v. *Mattox* a perpetual right to enter was absolutely necessary to carry out the purpose of the parties as indicated by the terms of the deed. In the present case, if the right to enter and remove is given for a reasonable time, the purpose of the parties as indicated by the terms of the conveyance can be thoroughly accomplished.

It is contended, however, by counsel for the defendants in error, that the rule laid down in Washburn on Real Property, which is quoted in the opinion of Mr. Justice Lewis in *Baxter* v. *Mattox*, is decisive of the case in their favor. The rule referred to is as follows: "But if the owner of land grants the trees growing thereon to another and his heirs, with liberty to cut and carry away at his pleasure, forever, the grantee acquires an estate in fee in the trees, with an interest in the soil sufficient for their growth, while the fee in the soil itself remains in the grantor." The authorities cited by the author to support that proposition are Clap v. Draper, 4 Mass. 266, and Knotts v. Hydrick, 12 Rich. 314. In Clap v. Draper it was held that "a grant to one, his heirs and assigns, of all the trees and timber standing and growing on certain lands forever, with liberty to cut and carry them away, conveys an estate of inheritance in the trees and timber, and the grantee can maintain trespass *quare clausum fregit* against the owner of the soil for cutting down the trees." There was no question in that case as to whether under such a conveyance the right to remove the trees was a perpetual right or one determinable after the expiration of a reasonable time. In Knotts v. Hydrick it was held that when growing timber trees are reserved for the

grantor, and excepted from a conveyance of the fee, the grantor has not only an estate in the trees but also an interest in so much of the soil as is necessary to sustain them, and such estate can not be terminated at the will of the grantee by giving the grantor reasonable notice to remove the trees.    Upon a careful examination of this case, it will be found to support the contention of counsel for the defendants in error.    The judge in the conclusion of his opinion said:    "If his convenience be thwarted, and his interests affected as a tiller of the soil, by the interest therein which he has allowed his grantor to retain, a court can only say to him, 'You have entered into the covenant and must abide its operation.'"    In Heflin v. Bingham, 56 Ala. 566, it was held that when a conveyance of land contained an express reservation and exception of the growing trees suitable for lumber, the title to the trees did not pass to the grantee, but remained in the grantor, with the right to enter upon the land and cut and remove them; and that if no time was specified in the contract within which the trees were to be cut and removed, it must be done within a reasonable time, and this would be a question to be determined by a jury under all the circumstances of the case.    In Boults v. Mitchell, 15 Pa. St. 371, a conveyance of the timber on a tract of land, suitable for rafting and sawing, was held to convey a right which from its nature is determinable; and if the party refuse to exercise his right in a reasonable time, after notice to do so, the right will be terminated, and the privilege of entry gone. In the opinion Bell, J., says: "The grant was in its very nature determinable; the right to cut timber was not to continue forever, at the pleasure of the grantee and his assigns; and if, from the destruction of the trees, the subject of it, or the refusal of the party to exercise his right after a reasonable notice to do so, the right itself is determined, the privilege of entry is gone with it, and the owner of the land may sue for a breach of close, though he may not recover, in damages, the value of trees taken, the property of which is not in him."    To the same effect was the ruling in Hoit v. Stratton Mills, 54 N. H. 109.    See also Magnetic Ore Co. v. Marbury Lumber Co., 16 So. (Ala.) 632; Davidson v. Moore, 37 S. W. (Ky.) 260.    In Rich v. Zeilsdorf, 22 Wis. 544, the right to enter and cut the

timber was to be exercised within two years; and it was there held that the absolute right of property in the trees was not excepted out of the estate granted, but only a right reserved to enter within two years to cut and remove the trees. To the same effect is Reed v. Merrifield, 10 Met. (Mass.) 155.

While it is possible, as was held in *Baxter* v. *Mattox* and Knotts v. Hydrick, supra, for parties to make a contract whereby one would be entitled to a perpetual right to enter upon the land of another and remove timber therefrom, as such an agreement is so unreasonable in its nature, no contract will be presumed to have this effect unless it is plainly manifest from the terms of the same that such was the intention of the parties. The language of the deed in the present case not only does not require but does not authorize such an interpretation. It is true that the effect of the paper is to pass title to the timber, but the estate in the timber is determinable, and comes to an end after a lapse of time which would be a reasonable time to be allowed to the grantees to enter and remove the timber from the land. Under this construction, after the lapse of a reasonable time the timber again becomes the property of the grantor. Such a construction prevents the anomaly which is apparent in Boults v. Mitchell and Hoit v. Stratton Mills, supra, where the instrument under construction in each case was held to authorize an entry for the purpose of removing the timber only for a reasonable time, and that an entry after the lapse of such a time was unlawful; but that, the timber still belonging to the person making the unlawful entry, the value thereof should not be taken into account in estimating damages for the trespass.

The court should have allowed the defendant in the court below to introduce evidence from which a jury could find what was a reasonable time to be allowed to the plaintiffs to remove the timber from the land; and this question should have been submitted to a jury, under instructions that they were to take into consideration all the facts and circumstances of the case and the conditions surrounding the parties at the time of the execution of the contract, and from this determine what would be a reasonable time to allow the plaintiffs to remove the trees; and if such a time had elapsed before the defendant commenced cutting the timber, his act would not be wrongful as against

the rights of the plaintiffs. If, on the other hand, the time which elapsed between the execution of the contract and the date at which the defendant commenced to cut the timber on the land was not such as would amount to a reasonable time to be allowed to the plaintiffs to remove the timber from the land, the defendant would be guilty of a trespass and would be liable to the plaintiffs for whatever damages they had suffered up to the time of the bringing of the suit; and the plaintiffs would be entitled to an injunction restraining the defendant from cutting the timber until after the expiration of such time as the jury should find would be a reasonable time in which the plaintiffs would be allowed to remove the timber from the land.

Growing timber is realty. *Balkcom* v. *Empire Lumber Company*, 91 *Ga.* 651. And the deed conveying such timber, although the estate therein granted is determinable, conveys land within the meaning of the registry laws; and therefore such a deed, if duly recorded, was admissible in evidence without proof of execution.

Payment of the balance due on the purchase-money to the grantor in the deed involved in the present case was not a condition precedent to the entry upon the land by the plaintiffs to cut the timber thereon. The title to the trees passed absolutely upon the execution and delivery of the conveyance. The time when the purchase-money was to be paid is fixed in the conveyance, but it does not make payment of the same a condition to be complied with before the title passed. The deed merely fixes the time when the purchase-money shall be paid, reciting that a certain part of the same had been paid and that the amount unpaid was one hundred dollars for each lot, and that this amount was to be paid as each lot was entered for the purpose of cutting the timber.

2. Peacock & Peterson sold the timber, title to which was acquired under the deed from McRae, to Peacock, Peterson & Company, but the deed was not signed by the members of the firm as individuals, but simply in the firm name. It appears that the individuals who composed the firm of Peacock & Peterson subsequently became members of a firm known as Peacock, Peterson & Company, who were the grantees in the deed from Peacock & Peterson. A deed was made by Peacock, Peterson

& Company to the plaintiffs to the timber described in the deed from McRae to Peacock & Peterson, but this deed was signed not only in the firm name but also by the individual members of the firm, Peacock, Peterson, and another. Error is assigned upon the ruling of the judge in allowing the deed from Peacock & Peterson to be introduced in evidence, on the ground that it was improperly executed, not being signed by the individual members of the firm. Even if this ruling was erroneous, it was an immaterial error, for the reason that the question was whether the title had passed out of the individuals composing the firm of Peacock & Peterson into the plaintiffs; and even if it had not passed out of them by the execution in the firm name of the deed to Peacock, Peterson & Company, when Peacock and Peterson united with their copartner in the new firm in executing a deed not only in the firm name but also in their individual names, then whatever interest they had in the property, either as individuals or as members of the firm of Peacock & Peterson, as between the parties to this transaction certainly passed to the grantees in the deed executed by the persons composing the firm of Peacock, Peterson & Company.

2. There are other assignments of error which we do not deem it necessary to deal with in the present case. Under the view that we have taken of the case, the judge erroneously construed the deed, and this error at the outset of the trial resulted in the case having been tried under what appears to us an entire misapprehension of the true intent and meaning of the deed; and many of the questions which were raised at the trial will probably not arise at another hearing. The judgment directing a verdict in favor of the plaintiffs must be reversed and a new trial had in the light of what is herein laid down.

*Judgment reversed. All concurring, except Fish, J., absent.*