# Watts v. Carrs Fork Coal Company.

(Decided June 14, 1929.)

MOORE & SMITH and NAPIER & HELM for appellant.

J. W. CRAFT for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Taylor Watts has appealed from a judgment by which he was enjoined and stopped in the course of the erection of a small garage. On October 6, 1914, James Stacy and others executed a deed by which they conveyed to the Carrs Fork Land Company all the coal, minerals, and practically everything connected with a tract of 351 acres, which they owned. In fact, this conveyance was so far-reaching and all-embracing that the grantors had but little left when they signed it, except such timber on the land as might not be necessary for the purposes contemplated by the grantee; and there was reserved to the grantors the free use of the land for agricultural purposes; but, of course, that use was subject to the various rights given the grantee in this deed, so that really about all the grantors had left was the right to pay the taxes.

By subsequent conveyances, these rights have passed to and are now enjoyed by the Carrs Fork Coal Company. After making this deed, the Stacys sold to Taylor Watts 25 acres embraced within this 351-acre boundary, and some time in July, 1928, he began the erection thereon of a small garage, about 10 by 18 feet in dimensions. He had completed this garage all but hanging the doors when he was stopped at the instance of the Carrs Fork Coal Company, which sued him and obtained a temporary injunction by alleging that he was constructing this garage upon certain parts of the 351 acres of which it was absolutely necessary that the Carrs Fork Coal Company should have the possession, use, and enjoyment, for the purposes of carrying out the provisions of

its lease. The sum and substance of the evidence for the coal company is that its business has increased to such an extent that it is contemplating the construction of another spur track, and if it constructs that track it will cause the coal company to probably have to remove a wagon road which it now has on the east side of the Stacy branch, and if it does remove that road it will probably have to reconstruct it on the west side of Stacy branch, and if it does reconstruct it on the west side of the branch, this garage will probably be in the way. Therefore it took the action that it did, which resulted in a judgment perpetuating the injunction against Watts, and he has appealed. In the case of Collins v. Lackey Mining Co., 219 Ky. 31, 292 S. W. 1091, we quoted from the opinion in Case v. Elk Horn Coal Corporation, 210 Ky. 700, 276 S. W. 573, the following:

> "Clearly the defendant has the paramount right to the use of the surface in the prosecution of its business for any purpose of necessity or convenience, and of this it is to be the judge, and unless it exercise this power oppressively, arbitrarily, wantonly or maliciously, plaintiff cannot complain."

When we said that and when we quoted that we were construing contracts very similar to this one, and that is very applicable here; but it is evident that the Carrs Fork Coal Company has now no immediate need of this property. Its officers seem to think they may ultimately need it, but there are too many "ifs" between that ultimate need and the present situation. They are not using this property now, and should not take a "dog in the manger" attitude when Watts proposes to use it. Whether or not the coal company will ever have need for this is a question we need not now determine, as it certainly has no immediate need of it. Watts has his garage practically completed. It would be a greater loss to him to tear it down now than it would to tear it down when the coal company ultimately establishes that it has immediate need of it. Before that happens, the action of the weather and the ravages of time may have disposed of the garage. In the meantime Watts should be permitted to hang the doors on his garage and use it.

The judgment is reversed.