## Kenmont Coal Company v. Hall et al.

(Decided June 16, 1931.)

CRAFT & STANFILL for appellant.

W. E. FAULKNER for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Reversing.

This action was instituted under Declaratory Judgment Act (Civ. Code Prac., secs. 639a-1 to 639a-12). It

was submitted on an agreed statement of facts. On the 31st day of May, 1915, C. C. Hall and Dulciana Hall executed, acknowledged, and delivered a deed to the Virginia Iron, Coal & Coke Company, whereby for an agreed consideration they conveyed to this company "all the coal, minerals, mineral products, oils, gases, salt, mineral waters, fire and potters clay, iron and stone, in, under and upon" the land described in the deed,

"together with such standing timber not exceeding 14 inches in diameter, two feet above the ground on the upper side as may be necessary for mining purposes and the exclusive right of way for any and all rights of way and ways that may hereafter be located on said property either by the party of the second part, its assigns or any person or corporation under authority of the party of the second part in, on or under the tract of land described in the deed, together with the right to enter upon the land and use the surface thereof in all and any manner that may be deemed necessary for the mining and removing therefrom all of said minerals and products and the manufacture of same and shipping the articles and products above named as well as to remove the products taken from or out of any other land owned or leased by the party of the second part or its assigns or that said party of the second part or its assigns or may hereafter acquire by purchase or otherwise with the exclusive right to erect upon said land and maintain and remove therefrom all such structures as may be deemed necessary by the party of the second part and its assigns to a full and free exercise and judgment of the rights and privileges herein granted."

The Kenmont Coal Company on March 1, 1921, acquired the title, rights, and privileges of the Virginia Iron, Coal & Coke Company by lease from the Colony Coal & Coke Company, and it acquired title to the lease from the Virginia Iron, Coal & Coke Company which it owned by virtue of the conveyance to it from the Halls. The land is described in the conveyance from the Halls. Its surface except a narrow creek bottom is hillside. No mining or removing of the coal or other minerals under the conveyance has been done by the Virginia Iron, Coal & Coke Company or by the Colony Coal & Coke Com-

pany, or the Kenmont Coal Company, nor has any timber been cut or removed from the land by either of these companies. The Kenmont Coal Company has its mining camp, office, commissary, shops, and mine openings on land adjacent to the 150 acres. The Kenmont Coal Company desires in the future to mine and remove coal from the 150 acres, and it will be necessary for it to have and to use in its mining operations certain mine timbers, such as mine props and other timbers usually necessary and required in the mining of coal on the 150 acres. The Halls have cut and removed from the 150 acres since the date of their deed to the Virginia Iron, Coal & Coke Company, certain timber above fourteen inches in diameter and made use of it for themselves. All of the surface of the 150 acres, upon which there is standing timber fourteen inches and under in diameter, is hillside land, some of it on the mountainside above the creek bed, above the spur tracks, the side tracks, miners' houses, store, offices, and other buildings of the Kenmont Coal Company. On April 3, 1929, the Halls notified the Kenmont Coal Company of their desire and intention to use portions of the surface of the 150 acres for agricultural purposes. They began such clearing by cutting and removing the timber thereon and fencing of the land. This was begun on the land six months after April 3, 1929. At the time they notified the Kenmont Coal Company of their desire and purpose to go upon the land they requested of it a representative to accompany them to mark out a boundary of the land to be cleared. They gave to it this opportunity of six months' duration to take and remove such timber from the designated boundary as the company would be entitled to under its deed, and demanded that they be permitted to cut and manufacture same into mining timbers in keeping with the instructions of the Kenmont Coal Company and to deliver same to it at some reasonable place to be agreed upon by them. The land upon which such timber is standing and within the boundary set out in the notice of Halls, if cleared of all the standing timber thereon, would be susceptible of agricultural use. It is claimed by the Halls that the mere use of the land after it is so cleared for agricultural purposes will not interfere with the present operation of the Kenmont Coal Company. The Kenmont Coal Company refused to accede to the request of the Halls. This action was filed by them against the Kenmont Coal Company and the Virginia

Iron, Coal & Coke Company and the Colony Coal & Coke Company to have interpreted their deed to the Virginia Iron, Coal & Coke Company and to have the rights of the parties declared: (a) The grantee and its assigns have failed to mine the land or remove therefrom any timber fourteen inches and down, two feet above the ground on the upper side, continuing thus to control the entire surface of the boundary for a further and indefinite period of time. (b) That they have a right to enter upon the land, cut and clear away all the timber, and put the land to agricultural uses not inconsistent with the use of the surface by the grantee and its assigns in the operation of mining coal. (c) Have they, after due notice to the grantee and its assigns of their intention to do so, the right to cut all the timber from the land or from certain distinct portions thereof after reasonable notice and the failure of the grantee and its assigns to remove the timber fourteen inches and down measured two feet above the ground on the upper side? (d) If they may clear the land or such portion thereof as they may desire for agricultural purposes and put the same to that use, may the Kenmont Coal Company and its successors and assigns thereafter enter upon the land and operate the surface thereof in any manner that may be deemed necessary and convenient in mining and removing the product therefrom or from other lands owned or controlled by it? Appropriate pleadings were filed, making an issue. The court in its judgment answered these propositions of the Halls in the affirmative and substantially granted the relief sought by them, from which the defendants, now the appellants, appeal.

The appellees urge an affirmance of the trial court, citing and relying upon Hicks v. Phillips, 146 Ky. 305, 142 S. W. 394, 47 L. R. A. (N. S.) 878; Ford Lumber Co. v. Cornett, 146 Ky. 457, 142 S. W. 718; Evans v. Dobbs, 112 S. W. 667, 33 Ky. Law Rep. 1053; Baustic v. Phillips, 134 Ky. 711, 121 S. W. 629; Bell County Land & Coal Co. v. Moss, 97 S. W. 354, 30 Ky. Law Rep. 6; McRae v. Stillwell, 111 Ga. 65, 36 S. E. 604, 55 L. R. A. 513; Baxter v. Mattox, 106 Ga. 344, 32 S. E. 94; Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369; McLemore v. Knott Coal Corporation, 203 Ky. 833, 263 S. W. 365; Watts v. Carrs Fork Coal Company, 230 Ky. 273, 18 S. W. (2d) 1107, and other cases of foreign jurisdiction.

The argument presented upon behalf of the appellees, and the rule deducible from the cases cited in their

behalf, are that no time being fixed in the deed for the removal of the timber the law implies the grantee will remove it within a reasonable time and the grantor may accelerate the grantee's time in which to remove the timber by notice to remove, and if the purchaser neglects to exercise his right for an unreasonable time thereafter he loses the same. The appellees insist that appellant's right to take the timber from the land under the conveyance is a mere license so to do, and this right to take and use the timber fourteen inches and down attaches only to such trees as may be standing on the land when the right is exercised. We cannot concur in this construction of the deed of conveyance nor in the application of the authorities cited and relied upon by the appellees as applying to it and its provisions. The conveyance of the coal and minerals, et cetera, described in the deed was a conveyance of fee-simple title thereto to the vendee in the deed, "together with such of the standing timber not exceeding 14 inches in diameter, two feet above the ground on the upper side as may be necessary for mining purposes." In so far as the timber of those particular dimensions and diameter is concerned, its conveyance was appurtenant to, yet coexistent and concurrent with, the ownership of the coal, iron, and minerals conveyed to the grantee by the deed. In this respect the title and rights to the timber thereby conveyed are plainly distinguishable from a conveyance merely of the timber in the line of cases cited and relied upon by the appellees, for here the vendee's rights thereto are interrelated with and a part of its ownership in fee simple of the coal and minerals conveyed to it. It cannot be said that it was within the contemplations of the parties to the conveyance that the vendee's rights and duties required it to sever the timber within a reasonable time or its rights thereto would be forfeited although its ownership of the coal and minerals in and under the land was in fee simple. The conveyance severed the title to the coal and minerals therein from the land itself, and it plainly was within the contemplation of the parties to the conveyance that. the right to cut and use certain timber described for the purpose named in the deed was to begin with and continue and exist in the vendee as long as the title in fee simple in the coal and other minerals was intended to be conveyed and as long as it was necessary to develop and remove the products named in the deed. McLemore v.

Knott Coal Corporation, 203 Ky. 833, 263 S. W. 365; Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369. The conveyance to the Virginia Iron, Coal & Coke Company of the coal, minerals, and timber of certain dimensions described in the deed to be used in the development of the land for coal and minerals was a severance of the mineral estate together with the timber of the dimensions described in the deed, from the surface estate, and the owner of the minerals and timber, thereby conveyed, is the owner thereof in fee, and the grantors remained the owners of the surface estate in fee simple. Such owner of the minerals and timber does not lose his right thereto or possession thereof by any length of nonuser, and the owner of the surface estate acquires no title thereto by nonuser of the owner of the estate in fee of the coal and minerals and such timber. Scott v. Laws, supra; Asher v. Gibson, 198 Ky. 285, 248 S. W. 862; McPherson v. Thompson, 203 Ky. 35, 261 S. W. 853; Thornbury v. Virginia Iron, Coal & Coke Co., 216 Ky. 434, 287 S. W. 698. The meaning and the effect of the conveyance was a severance of the title to the property therein described from the surface estate, and therefore the duties and rights of the owners of the severed estates in the surface of the land and the coal and minerals and such timber are independent, yet correlative. Each must respect the right and title of the other. Neither is entitled so to exercise its or their right of ownership as to deny or deprive the benefit of the ownership of the other. While their rights are independent and correlative, it is the duty of the owners of the respective estates so to exercise their or its right of ownership consistently with the other and in a way and manner not amounting to absolute ownershp of both estates. The respective owners of the severed estates each has a paramount right to use his own estate in the land in the prosecution of their respective businesses for any purposes of convenience or necessity, and of this each is to be the judge, and unless such owner exercises this power "oppressively, arbitrarily, wantonly or maliciously," the other is without grounds of complaint. Collins v. Lackey Mining Co., 219 Ky. 31, 292 S. W. 1091; Watts v. Carrs Fork Coal Co., 230 Ky. 273, 18 S. W. (2d) 1107.

It is plain from the language and express purpose of the conveyance that it was within the contemplation of the minds of the parties at the time of the making of the conveyance that the exercise of the ownership by the

owner of the surface estate should not deny or destroy the right and title of the owner of the estate severed from the surface, and vice versa. With this view of the language of the deed and its express purpose, it is our conclusion that on a showing of the facts and according to the established principles of equity, the court may determine the right of the appellees to enjoy and use any portion of the land for agricultural purposes, which at the same time will secure and preserve to the appellants the use in the present and future of sufficient of the standing timber not exceeding fourteen inches in diameter two feet above the ground on the upper side as may be necessary for present and future mining purposes of the owner of the severed estate. The appellants are without right to deny and to deprive the appellees wholly of the use of their land for agricultural purposes. The converse is equally true. The appellees are not entitled to use the entire tract of land for agricultural purposes and thereby remove all the timber, including that which is or may be on it at any time in the future, and which the appellants may need to develop the land for coal and minerals. Bolen v. Standard-Elkhorn Coal Co., 210 Ky. 43, 275 S. W. 372; Standard Elkhorn Coal Co. et al. v. Bolen et al., 193 Ky. 342, 236 S. W. 241; Collins v. Lackey Mining Co., supra.

It is our conclusion that the purpose and intent of the deed of the appellees and its effect were to convey the title in fee the coal and other minerals listed in it, including timber not exceeding fourteen inches in diameter with the right to enter upon the land to take the coal and other minerals as the owner in fee thereof, and to use at the time of entry for that purpose such timber as may be necessary. It was plainly the intention to convey to the vendee the right or privilege of utilizing timber of the dimensions given in the deed at the time it was needed in operating and conducting its mines and not before. The title to such timber passed as an incident and appurtenant to the fee in the coal and minerals, with the right to the grantee or its assigns or successors when the occasion for utilizing it arises, of using timber of those certain dimensions. Accordingly, the right to use the timber exists only as the need for it arises, at which time it attaches to such timber of the dimensions indicated in the deed as then may be available on the land. The appellants, in anticipation of their future use of such timber,

are entitled to protection against its destruction by the appellees, Standard Elkhorn Coal Co. v. Bolen, supra.

The parties to the conveyance are each entitled to prevent the other from exercising their or its rights of ownership in fee of the severed estate, arbitrarily, capriciously, oppressively, or wantonly and thereby depriving the other of their or its respective estates, but each may use the respective estates in a reasonable, prudent manner, having due regard to, and consistently with, the interests and rights of the other.

The respective rights of the parties hereto should be determined on a hearing of the facts and judgment rendered accordingly, so as to protect and preserve to them the enjoyment and use at the present time, as well as in the future, the severed estates respectively ownd by them.

Wherefore the judgment is reversed for proceedings appropriate and consistent with this opinion.